Case No. 22-5342, Cato Institute Appellant v. Federal Bureau of Investigation, U.S. Department of Justice. Mr. Matsch for the appellant, Mr. Kennedy for the appellees. Good morning, counsel. Mr. Matsch, please proceed when you're ready. Good morning. May it please the Court, for two reasons the FBI failed to show beyond material doubt that its voice is circumspect. First, it lacked any justification for limiting its search to the indices of its central record system, CRS. And second, it also should have searched its guardian data. The district court's decision, particularly on the CRS issue, de facto exempts from FOIA all records not tied to an FBI investigation by upholding a search methodology that could not locate. By contrast, Cato sought only a narrow supplemental search, namely for, number one, emails in a set of field offices where the FBI's CRS search had already discovered leads. And number two, the guardian database that it didn't search. This Court should order that narrow search and reverse the judgment of the district. I'll start first with the issue related to CRS. Our argument has two main premises. The first is that Cato's request sought in part records not specifically tied to an FBI investigation. The FBI has never disputed that. And second, the FBI's index search of CRS, according to its own affidavit, was limited to records of investigative interest. It follows that a CRS index search was not reasonably calculated to locate all responsive records, namely the ones not tied to an investigation. Do you think the search that was done was adequate to find any references in investigative records? It just wasn't adequate to capture non-investigative records? That's correct. Why do you want him to search the guardian database, then, since that's all investigative records? Well, I mean, that's the—I should say the CRS search was adequate except as the guardian database. So the guardian issue— But you said you don't—you said the search was adequate as to investigatory records, that you're looking now for what you think was omitted, or your concern was omitted was a search for non-investigatory records, which I think is not going to be any help to you. I'm sorry. I think I misspoke. I've sort of been thinking of these as two separate issues, although I realize they are connected. The issue with the guardian database is that there's not sufficient evidence in the record that the sentinel search of both CRS and guardian captured the guardian record. So except as to the guardian records, yes, I think the CRS search is adequate for the investigative records, not the non-investigative records. So the FBI itself reached a similar conclusion in Watkins, where there it's declared and explained that a CRS search would not likely locate responsive records because those records were not tied to an investigation, so to hear for the non-investigative records. So the framing of the declarant submission ranges beyond investigative by terms because it covers administrative and some other things. I can't remember exactly what the list says, but the way that it's framed in the declaration itself ranges beyond investigative. Are you referring to the declaration in Watkins or the declaration in this case? In this case. Yeah, so their declaration says that CRS, the broad database that the search contains these administrative and personnel records. The search that it performed in this case could not have located those. The search that it performed in this case was of the indices to the CRS system, not the whole database. We know it can search CRS in other ways, such as by performing a full text search, which this court described in the Shapiro case that we cited. It didn't do that here. It searched main indices and reference indices. The main indices are the subjects of the investigation, and the reference indices are other people associated with an investigation. Presumably, there's some other way that it can locate these administrative personnel and other records. The record doesn't exactly speak to what those ways are, but what the record does speak to is that it didn't do that in this case. If it had done that in this case, the case would be very different. I'm sorry. When you didn't do you said you said you did not. You've not requested a text search, and yet you're saying the index search might not be capturing things. So what's door number three here between a text search and an index search that they should have done? So I didn't hear. I'm trying to understand what you said about one of the difficulties being that the index search is only going to cover investigation subjects or people who come up in investigations. But you also agree that you didn't ask for a text search text search. And so the index search is not going to uncover what you're looking for. And you haven't asked for a text search. What is door number three here? What type of search is there? It's not a text search that they think they should have done. So door number three that we asked for was a non CRS search of the email systems in the field offices where the FBI's CRS search located beads. So those would have to be text searches. Well, that's that's a that's a search outside the CRS database. I know, but you want to search for the word word Cato. You want a full text search index search there. If the emails in these field offices were indexed. I'm sorry. We're contained in CRS and we would be satisfied with the text search of CRS. We haven't asked the FBI to do that. We've asked the FBI to do a different search that that might be another way to produce the responsive record. So I'm just being thick here. I'm not understanding what this other way of doing the search is. So there's there's there's documents that are contained in the CR in the central record system. And then from our understanding, there are documents that are outside the central record system. Right. And for those documents outside the central record system, how would they do a search other than a text search? It might be it might be a text search outside of their own email databases. I'm saying that what the FBI when I when I read you want a text search of those other database of other databases. Yes. Your reply brief, you didn't ask for a text search below. That's why I'm confused. I think in our reply brief, we said we didn't ask for a text search of CRS, the central record system. OK, so you do want a text search of. These emails, that's what you're asking for. I mean, I think it would be a text search. Yeah. I mean, we the record doesn't I mean, they haven't explained how they could search outside of CRS. I think a text search would be a reasonable way to go about a text search of those 12 field office email system. But I think in our reply brief and I can ask the district court for a text search of those email systems. We asked the district court for a search of the email systems. I don't think we specified that it would be a text search. But I mean, I think it was kind of clear from the request, which asked the FBI to look for particular keywords. So I think the answer to your question is yes. Yeah. If there are any other questions on the CRS issue, I see my time is expiring, so I'll quickly summarize our argument on Guardian. So the Guardian issue, the FBI doesn't dispute that Guardian contains responsive records. All it argues is that a Guardian search would duplicate the CRS search because it used the same Web-based interface called Sentinel to search both CRS and Guardian. But it acknowledges that that requires that the Guardian records be uploaded to sent record doesn't contain evidence of that. According to the FBI, records are uploaded from Guardian to Sentinel after they're reviewed for one and never to approved by supervisor special agents. And there's no evidence that either occurs in every case or in the typical case. I don't understand that argument. You're saying that to defeat a summary judgment motion in FOIA, the agency has to put in evidence that they complied with their procedures. And if they didn't produce evidence of that, then the court can't grant summary judgment. There's no presumption that they follow their own procedures to responses. So there there is no. So on the approval step, there is no evidence of a requirement to approve Guardian. For all we know, those Guardian entries could be regularly rejected by the supervisors and not uploaded to Sentinel. They could have said all these record all Guardian records are approved by the supervisors. And that would sort of allay that concern. But they haven't said that they haven't described the criteria that the supervisors use for approval. They haven't described how often it happens. And they haven't explained why, if it was a sort of ministerial step, as they suggest in their opposition brief without citing the record, why it has to be done by a supervisor rather than a clerical staff member. But to more directly answer your question about following their procedures, I think they do get a presumption that they follow their procedures. We introduced evidence to rebut that presumption, which are these three audits conducted by the DOJ and the FBI OIGs. Particularly the 2008 audit, which shows that the same FBI personnel, supervisors, special agents, at the relevant time period, violated very similar, not the exact procedure here to be sure, but similar procedures requiring sort of going into Guardian. But if they weren't the same procedures, then what relevance do they have for this case? Well, I mean, they don't conclusively show that the procedures were violated. I think that as a FOIA requester who's not entitled to discovery, it's very hard to show that the specific procedures were violated here. But we've come forth with evidence that, for example, some FBI supervisors didn't even know that. I mean, this is at page 15 of the 2008 DOJ audit. But the supervisors didn't even know of some of these Guardian review requirements. So it's relevant. I mean, it's not, you know, a trial. If there were a trial in this case, which FOIA cases typically aren't, you know, the jury would weigh that evidence. But I think it's relevant and sufficient to defeat summary judgment for them. And I mean, they have the burden on this case as well. When you're reading that portion of the audit, it's saying those supervisors weren't even aware that they had to do this approval process. So is your point that the approval process that moves things from Guardian into Sentinel wasn't happening at all, that the audit shows that? I thought it showed really a delegation issue. So, I mean, there are a few different points, issues that they found in that, and I'm just going to read from it. It doesn't show that it never happened. I mean, I don't think we can go that far. I mean, it says, one of the field offices, the supervisor special agents assigned oversight responsibilities for the Guardian program was not aware of the Guardian supervisory requirements. So that would suggest that at least those supervisor agents. I'm not sure, is there an elaboration? What does it mean not aware of the Guardian supervisory requirements? That is, this person didn't know that they had this task to do, and it was never done, or they weren't aware because someone else was already doing it? Well, so I think, I mean, there was another problem at a different field office where the OIG found that they had delegated it to other people. But at the first field office that I mentioned, it seems like they didn't even know that they had this responsibility. So that means it wasn't being done at all. It wasn't being done at all by that supervisor. That's how I read the audit. I mean, the audit doesn't elaborate, but that's what it says. Let me make sure my colleagues don't have additional questions at this time. We'll give you some time for rebuttal. Thank you.  As the declarations in this case explain, the FBI searched its central records, which is a comprehensive agency-wide database containing investigative as well as administrative personnel and other files. And as the FBI's declarations further explain, this U.S. is the database that the FBI concluded would house all responsive records to Cato's request, and it conducted a search that was reasonably calculated to uncover those records. The district court correctly concluded that under this court's decisions, particularly its decision in Mobley, those declarations warrant summary judgment in the FBI's favor. When the FBI did its search, it found that it had to do sort of these field office-specific searches as well, that the CRS search wasn't sufficient. And their argument is that when you did that, you should have looked at the e-mails, too, and you didn't. So the FBI first conducted a search of its automated indices through Sentinel, and based on the results from that search of the automated indices, it looked at certain field office indices, which are also technically part of CRS. And if you look at JA-40, none of the responsive records from those additional searches of the manual indices in the field offices pointed outside the CRS or indicated that there might be records outside of it. Do those manual indices cover the e-mails in those offices? Absolutely. The extent the e-mails are federal records, they're treated like other records of the FBI, and they're uploaded to CRS and serialized into the relevant file and indexed like other federal records. And so, yes, the idea that there might be other… Your answer is the e-mails they want searched have already been searched, at least at the index level. The search of the manual indices encompasses e-mail records to the extent that they are in the CRS. What does that mean, to the extent that they're in the CRS? Does that mean they're not? Large portions that aren't? Do we know if these field offices, whether they're in there or not? So, the FBI concluded that there were no likely… There were no e-mails… There were no records that were outside the CRS that would be responsive to the Cato Institute's request. Instead… How can they know that if… Don't we have to know whether it was searching the e-mails, whether they were indexed, to know whether they could say that? I think the question is whether, in conducting a search, there were leads that pointed elsewhere. The leads pointed to these field offices' manual indices in particular. They pointed to the manual… Which should have included e-mails, but then now it sounds like… And maybe I misheard, but it sounds like you're saying, well, we're not sure if they included the e-mails. So, it seems like you're already pointing to these field offices and their records as needing to be searched as a supplemental search. And what I'm just trying to figure out is, did that supplemental search cover their e-mails? Because if it didn't, then I'm not quite sure what I can tell from this declaration as to their basis for concluding that there's no reason to think there'd be anything in those e-mails. If you're already looking, you're targeting at these particular field offices. So, the e-mail records are uploaded into the CRS to the extent that they're federal records and they're relevant to a case file in the CRS. And so, the manual indices contain e-mail records like they contain other records. And so, the FBI's search of the manual indices included e-mail records as well as other records. And so, that would include personal or administrative e-mails and not just investigatory e-mails. Exactly. To the extent that an e-mail is relevant to an administrative case file in the CRS, it would be uploaded to the CRS in the same way that other records. In each of the relevant field offices here. Yes, the manual indices work in the same way as the automated indices. So, then there isn't a bank of e-mails that's outside of what gets folded into CRS? The question for this court is whether the search was adequate to uncover responsive records. And here, the FBI searched the CRS and it found that, you know, there were no leads that pointed outside the CRS. So, the idea that there might be other e-mails relevant to Cato Institute is a sort of speculative claim that this court has found, you know, can't undermine the adequacy of a search. The possibility that other e-mail records relevant to Cato exist is not sufficient to undermine the adequacy of the search. But you didn't answer the Chief Judge's question. You said what you thought the issue in the case was. That's fine. That's not what the Chief Judge just asked you. Well, the FBI found that there were – it was unlikely that any other e-mail – if there are e-mails in other databases, the FBI found that any other database was unlikely to, you know, house records responsive to Cato's request. That are germane – that are germane to the request. Yeah. So, just to be clear, so there is not – the FBI, to its knowledge, there is not a pile of e-mails that would not have been – of federal record e-mails that would not have been indexed even into these manual indices in the field offices. There is not a pile that the FBI concluded would likely contain records responsive to Cato's request. So, there's a pile, but they just don't think there'd be anything in there. On what basis did they conclude that those piles would not have anything by Cato in them? So, I think if you look at this court's cases, for example, the case in Mobley – So, I'm actually asking a question almost about the declarant's knowledge here, the facts. So, on what basis did they conclude – it sounds like there were e-mails that the FBI was aware of that were not being searched, but concluded that there wouldn't be anything there. And I'm just trying to understand the basis because they were already doing – felt obliged to do a search of these field offices, at least manual indices. And if they get there and they discover there's a pile of documents that haven't been indexed or for some reason aren't going to be covered by that search, how do they – on what basis did they conclude there's not going to be anything in there? They could conclude because a pile is two e-mails. That would be one explanation. Or it could be it's labeled, you know, office NCAA basketball tournament pool, betting pool, or something like that. But how do we know if there is a pile? Don't we have to have some basis for knowing? So – You can't just say it's speculative if there's a big pile of documents somewhere that were missed. The FBI concluded that any records related to the Cato Institute would be in the CRS because it's its primary database. It contains applicant investigative administrative personnel files. And so it searched its indices looking for records related to the Cato Institute, and it didn't find anything that pointed outside the CRS that indicated that, you know, records relevant to the Cato Institute would be located in any other database. And so – No, that's not right because it did point them to go looking at these manual indices in the field offices. So, in fact, it did tell them to go look somewhere else. It's true that the FBI followed a lead from the automated indices to the manual indices, but those were all part of the CRS. And so it then searched the manual indices. But it got pointed to the need to do a second search. So it found responsive documents that pointed to these field offices. You said they had to do a separate search of those. They searched the indices to the manual indices in the field office. That took another search effort. I'm confused because it sounds like you say they're all in CRS, so they would have been covered by the first search. But then I also hear that, no, we did the first search, and that gave us leads. Yeah. And so we did supplemental searches or searcher searches. Yeah. So, to take a step back, basically, there are two. The CRS is a large system of documents containing sorted into case files on a variety of subjects. To search the CRS, the FBI primarily uses the Sentinel system, which searches the automated indices, which are all the indices except there are some historical indices in certain field offices that are not automated yet. And so it begins with a search of the automated indices. And then the extent that it found responsive records in its search of the automated indices, for example, ones that pointed to field offices, then it searched also part of the CRS, but it searched the manual indices in those field offices. So both categories of searches are encompassed within the CRS. It's just that they're two different ways to search the CRS, I guess. That's right. At least to me the question is, then that covers the CRS. Then what about stuff that is maybe outside the CRS but still responsive? What's the basis for saying that whatever's outside of the CRS, and it sounds like there's stuff outside the CRS, that they're not going to be responsive to the request? The basis, I think, is that the scope of the CRS is very broad, and the FBI concluded that records related to the Cato Institute would likely be housed within the CRS. And then it's willing to follow leads. If you look at this court's cases, they stand for the proposition, I think, that the FBI can conduct a search of the CRS in response to a general record request. But then if records emerge during that search that point outside the CRS, that's a basis for looking outside the CRS. Nothing like that came up in this? Nothing like that. No indication of something? The two types of searches that were conducted of the CRS, nothing emerged that suggested that, wait a minute, we might want to look outside the CRS. But it's been the case in other situations where searches of the CRS would give a lead that would point outside the CRS. And if that happens, then that kind of second-degree supplemental search outside the CRS is conducted. That's correct. What's outside the CRS? There are certain databases that, you know, by statute are required to be outside the CRS because of privacy interests or national security's concern. You don't want sort of the CRS, an index search of the CRS is a tool that FBI personnel use on a daily basis to conduct their own business. But there are certain files that you wouldn't want, you know, every FBI personnel to have access to. So there are certain databases that lie outside the CRS. There are also certain sort of very specific policy, you know, certain databases related to very specific policies. I point to its case in Watkins, you know, that concerned the NICS background check system. There is a database concerning, you know, names in the background check system. That is not necessarily going to be in the CRS. But the CRS is the general primary database for lots of different subjects. Are there historical records that just haven't been indexed into CRS yet, or is that all taken care of by now? That's all taken care of. They're not necessarily all accessible through the automated indices, which is what I said. And I'm sorry if I was unclear on this point. But they are accessible through the manual indices, which are also part of the CRS. And then just the declarant says that the CRS is going to include not just investigatory but personnel administrative records. But it says the indices, it just describes the indices, which are what's searched, the whole CRS is when searched, as only involving subjects investigations or those associated with investigations. So if you're doing an index search, how does an index search ever capture non-investigative records? Because they're not indexed. Or are there other indexes? Yeah, two responses on that, Your Honor. First, I think the argument, Cato's argument, that the problem with the search was that it was conducted via an index, not that it didn't, you know, the FBI didn't look outside the CRS. It was really, I think, developed for the first time in reply. And I don't, the government hasn't had an opportunity to respond to that. And I don't necessarily think that's a good argument properly before the court. But even if the court were to consider it, the CRS, the indices to the CRS extend to the same range of subject matter as the CRS itself, which Cato conceded before you that CRS extends beyond investigative files. And I think a few points on the record make that very clear. The indices don't relate only to investigative records. First, if you look at JA 36, which is the only point at which the declaration explicitly described the scope of the indices, it says that the indices offer access to a comprehensive agency-wide set of index data on a wide variety of investigative and administrative subjects. So I think that settles the question pretty conclusively. But if you want to take a step back and understand a little bit more how the indices work, the CRS is sorted into case files. And those case files fall into a variety of subject matter classifications. The list that you're familiar with, administrative, personnel, general, investigatory. And in each of those subject matter classifications, the case files relate to a particular sort of administrative action, a particular personnel action, a particular investigation. And each of those case files has a main index entry. If you look at JA 3233, it says that a main subject matter of the case file is the main index entry. And so if you put those two things together, it's clear that the case files in the CRS extend beyond investigative matters. The main index entries in the CRS similarly extend beyond investigative matters. So I'm just trying to make sure I understand this because it seems important and sort of central to their argument. When the declarant says that the indices are based on either subject of investigation or someone associated with an investigation, that was only a for example, that there are actually indices that also involve personnel matters. That's exactly right. I think that's illustrative. You know, the FBI is primarily concerned with investigations, but that's not attempting to describe the scope of the indices in the CRS. That's an example of the type of indices that might be there. So this is completely hypothetical, but imagine Cato was concerned that people who work for Cato just wouldn't get hired by the FBI. I'm making this up. It's completely hypothetical. I'm not suggesting it remotely happens. So nothing to do with the FBI's investigatory work. And it seems undisputed that those personnel records and administrative records relating to hiring process are going to be in the CRS. And what you're telling me is that those records will be indexed in a way that has nothing to do with investigatory status, such that they would be found. Yes, if you look at J34, it described the indexing process and says things are indexed that are of sufficient significance, weren't indexing for future retrieval. And I think, you know, in the context that I've explained, which is that the indices extend more broadly than investigations, there are indices for administrative case files. If you're thinking about significance for future retrieval, that's going to include significance for future retrieval for matters related to that administrative topic. When something's in the Guardian system and it's getting uploaded to Sentinel, how does the indexing work there? Is it automatic? Is the computer just sort of generating the key terms? And if so, is it based on key terms that already exist in CRS, or how does it know to identify? Again, imagine, hypothetically, Cato hadn't appeared anywhere. I know that's not true here, but in any record, or some entity files a FOIA request looking for references to itself at the FBI, and there's nothing anywhere. And then something comes into Guardian, and the Guardian document is getting uploaded to Sentinel. And for the first time, this entity's name is appearing in an FBI record. How would that show up in an index? Do just names always show up in an index? Are they necessarily an index of their own? So the indexing is done by the FBI agent responsible for the case file. So if there wasn't already an index entry for a particular entity that's mentioned in a case file, or in a Guardian incident, I think the FBI agent could create a new index entry that would then take an index search to that relevant record. And so in indexing the Guardian entries, an FBI agent wouldn't be limited to those index entries that previously existed. And when they create that, then does the computer automatically look for – so imagine now, changing my hypothetical – entity X actually had appeared in earlier records, but for whatever reason hadn't been indexed, didn't seem to be significant enough, or had kind of a generic name that was hard to tell what was going on. Once it is indexed, does it apply retroactively to pre-existing records? If I understand your question correctly, it's if the name of something that could be indexed or is later indexed was not indexed originally, will that file related to the entity show up in an index search? Is that your question? Will those other documents get pulled – Yeah, that weren't originally – That later added term. Yeah. So I don't think – as I understand the record, if a document is not initially indexed, I don't think it will automatically later be indexed. As I said, the FBI agents are responsible for indexing. But again, I want to return to a question really at issue in this case. I don't think Cato points to any evidence that subjects that should be indexed are going unindexed. And in fact, FBI uses indices in its work on a daily basis. And as a law enforcement agency, the FBI personnel has every incentive to make these indices useful and comprehensive, and yeah, to dot their I's and cross their T's and do this well. And so I think the idea that there are entries that are going unindexed, randomly unindexed, is counter to self-interest and to the declarations that explain that the FBI uses indices. Can I just – no, I don't want to – just button down or button up. I don't know. I never know which one it is. One last detail. Which is the part of Cato's submission is that there's potentially a delta between what's in the Guardian staff and then what's approved to get included in CRS. And as I read your brief, you don't think there's that delta. You think that actually the approval process, it covers the waterfront and everything actually is going to ultimately make its way into the CRS. And that's how you read the declaration? That is how I read the declaration. And my discussions with the FBI have confirmed that this is the way that the process works, that that step, that initial approval step, is ministerial. And it might be the case that a Guardian incident entry is temporarily rejected. It's en route. Further information needs to be filled out, but then it will eventually be resubmitted and incorporated into the Guardian database and eventually incorporated into CRS. And is this also covered by your point that just as a matter of the daily run of business for the FBI, they have every incentive to make sure that Guardian documents are accessible through searches of CRS in the same way as other things because they're conducting important investigative duties? That's precisely right. Do we have any sense of the time? Does this just sort of happen in real time on a daily basis? Because they read the audits as suggesting that, at least in one field office, it wasn't happening and in another, that that's an old audit and time has passed. Absolutely. Your understanding that it is sort of real time. I mean, maybe there's a gap of a day or so, but these things are getting bloated. And I guess I have a compound question. I apologize. And when they talk about approval process, does that just mean someone's got to index the information in there so it can get into fentanyl and be useful? It's not sort of a yes, you get to come in or no, you don't get to come in? Yeah, I think I can answer that compound question. I apologize. So the way that the declaration don't speak to a precise timeline on which this approval process operates, but the way that it works is that an incident entry arrives in Guardian, either through eGuardian or directly in Guardian itself. And the FBI supervisor looks to see whether everything is there and then proves the document. At that point, it becomes a Guardian incident and it's assessed for further investigative value. As we explained in our brief, I think that actually confirms the idea that these are routinely approved because the second step is where the FBI assesses it for investigative interest. And so at that second step, it's assessed for investigative interest. It might be assessed as a zero, as having no further investigative investigation necessary, at which point it's closed and serialized in fentanyl. Or it might be deemed to warrant further investigation, at which point a case file is opened in CRS and it's investigated in the normal course. And at that point when it's opened in CRS, it's closed in Guardian. And so in either case, it's closed in Guardian and put into CRS as a sort of no further investigation needed or as a separate investigation that's going to be conducted by the FBI. Does that answer both of your questions? I'm sure my colleagues don't have additional questions for you. Thank you, Mr. Kennedy. Thank you. I urge the court to affirm this report. Mr. Match, we'll give you two minutes for your rebuttal. Thank you. So the FBI apparently has a process where they look first in CRS, and if they find leads outside of CRS, they look outside of CRS. In this case, it's not surprising that they wouldn't find leads in CRS to go outside because the CRS search that they performed are of investigative records. So if requesters sought non-investigative records and the indices only index investigative information, of course CRS wouldn't point outside of CRS to cause leads. So I think that shows that it's sort of overall approach to sort of starting with CRS and going outside is misguided. Mr. Kennedy suggested that CRS, though, contains non-investigative records and actually indexes them. I mean, that, of course, I think directly conflicts with the FBI's declaration in Watkins, which said this is a non-investigative record, so we don't think CRS is likely to contain responsive records. And I mean, you can see why, because the part of the declaration he pointed to on JA33 and 34, indexing information to CRS is done at the discretion of FBI investigators, not necessarily non-investigative material or non-investigative tasks here. Accordingly, the FBI does not index every individual name or other subject matter in the general indices. So there's some discretion to index or not index information. And because they have that discretion, if they don't find indexed records, that doesn't mean that there aren't unindexed records there, too. I just want to make one very quick point about... They found documents about Cato using the index. I mean, Cato is indexed in this case. Yes. So why are you concerned, then, that Cato's not going to show up in an index search? Well, so, I mean, Cato clearly did show up in an index search. The question is whether the documents, whether all responsive documents regarding Cato are indexed to it. The declaration here is read to say that we also index materials in a way that we can get them if we need them in the future for the retrieval, including administrative and personnel matters. Right. That's how it's read. Does that not resolve your concerns that the index search didn't capture administrative and personnel records? I mean, I don't think that's what the declaration says. The declaration says indexing information in the CRS is down to the discretion of FBI investigators, and it describes the indices as the subjects and the affiliates of a particular investigation. I mean, Cato's a public policy think tank. If there are FBI officials, I mean, Cato is a think tank that addresses issues related to civil liberties. If the FBI's got emails talking about a certain policy proposal that Cato might have put forward regarding a civil liberties issue, that's not necessarily connected to some investigation. It would be responsive to the request, but there's no reason to believe that an investigator would have indexed it to an investigative index. Is there any reason to believe a personnel record would have indexed it? The administrative record? It seems like you had to be housed somewhere. I mean, it has to be housed somewhere. I mean, it could be in the CRS. It might not have been indexed. I mean, what we're asking it to do, or the FBI to do, is to search the email systems that are not in CRS. They're probably there. I mean, if they exist, they could well be there. They have to be somewhere. I thought you were arguing also about this Guardian system, but because that one involves investigatory matters, you'd be indexed there. So it seems like there's really nothing more to be said. I mean, you've got your argument about time lag, but other than that, or maybe some people somewhere in some field offices in 2008 dropped the ball. But it seems to me that's less your concern. Your concern now is there might be some administrative emails. There might be some administrative policy-related emails like the ones in Watkins that the FBI acknowledged would not likely be found in a CRS index search. On the time lag, I want to point out, though, that even though it's an old audit, the audit's directly relevant to the time period of this case. The request didn't have a date range, and the FBI located records before and after 2008. So that audit actually is relevant in terms of time. Okay. Thank you, Mr. Ash. Thank you very much. This opportunity will take this case under submission.
judges: Srinivasan, Millett, Wilkins